Judge Barbara Jacobs Rothstein

___ FILED    ___ ENTERED
___ LODGED   ___ RECEIVED

DEC 1 1 2002

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____DEPUTY

CR 01-00338 #00000199

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR01-338 |
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| EQUILON PIPELINE COMPANY, LLC, | |
| Defendant. | |

The United States of America, by and through John McKay, United States Attorney for the Western District of Washington, and Lawrence Lincoln, Francis J. Diskin, and Helen J. Brunner, Assistant United States Attorneys for said District, and James D. Oesterle, Special Assistant United States Attorney, and defendant, EQUILON PIPELINE COMPANY, LLC. (hereinafter "EQUILON" or "defendant company"), as successor by operation of law as of July 1998 to Texaco Pipeline Company, Inc. ("TPLI"), through its authorized representative and its attorneys, Ronald L. Olson and Jerome C. Roth of Munger Tolles & Olson LLP, and David Vance Marshall and Nick Verwolf of Davis Wright Tremaine LLP, hereby enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C):

1. <u>The Charges</u>  The defendant company, through its authorized representatives, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter pleas of *nolo contendere* to Count 1 of the Indictment,

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 1
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1. charging a violation of the Federal Water Pollution Control Act related to the negligent discharge of gasoline, in violation of Title 33, United States Code, Sections 1319(c)(1)(A) and 1321(b)(3), and Count 6 of the Indictment charging a knowing and willful violation of a minimum safety standard for interstate pipelines related to training, in violation of Title 49, United States Code, Section 60123(a), based on the factual statement set forth in paragraph 8 below.

2. **Knowledge of Elements of the Offenses**. The defendant company, through its authorized representatives, acknowledges that it is aware of the nature and elements of the two offenses to which it is entering *nolo contendere* pleas. Specifically, if this case were to proceed to trial, the United States would have the burden of proving beyond a reasonable doubt the elements of the offenses as listed below:

   a. <u>Count 1</u> - - Title 33, United States Code, Sections 1319(c)(1)(A) and 1321(b)(3).

      (1) The defendant discharged or caused or contributed to the discharge of oil or a hazardous substance;

      (2) The amount of oil discharged was a quantity deemed to be harmful by federal regulation;

      (3) the oil or hazardous substance was discharged into a navigable water of the United States; and

      (4) the defendant's conduct was negligent.

   b. <u>Count 6</u> - - Title 49, United States Code, Section 60123(a).

      (1) An owner or operator transported hazardous liquid through a pipeline facility in a manner affecting interstate or foreign commerce;

      (2) The defendant violated a regulation or aided and abetted a violation of a regulation prescribed for such a pipeline facility, namely, the requirement that documents be maintained establishing that at intervals not exceeding 15 months, but at least once each calendar year, pipeline control operators have their performance under the pipeline's training program reviewed; and

      (3) The defendant did so knowingly and willfully.

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 2
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

3.  **The Penalties.** The defendant company, through its authorized representatives, understands that the maximum statutory penalties applicable to corporate defendants for a violation of the offense charged in Count 1 of the Indictment, include a fine of either Five Hundred Thousand ($500,000) dollars, or twice the gross gain or loss resulting from the unlawful conduct, as set forth in 18 U.S.C. § 3571(c) and (d), a term of probation of five (5) years, and a special assessment of One Hundred Twenty-Five ($125.00) dollars. The defendant company, through its authorized representatives, understands that the maximum statutory penalties applicable to corporate defendants for a violation of the offense charged in Count 6 of the Indictment, include a fine of either Five Hundred Thousand ($500,000) dollars, or twice the gross gain or loss resulting from the unlawful conduct, as set forth in 18 U.S.C. § 3571(c) and (d), a term of probation of five (5) years, and a special assessment of Four Hundred ($400) dollars.

The government and defendant company agree, pursuant to the provisions of Rule 11(c)(1)(C), that for purposes of this Agreement the maximum possible aggregated fine that could be imposed for the two counts is Fifty-Two Million Dollars ($52,000,000). This Plea Agreement provides for pleas of *nolo contendere* pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and, as such, the parties have agreed that the appropriate penalties, including fine, to be imposed at sentencing for the counts of conviction are as set forth below, subject to the Court's discretion in accepting all the terms of this Plea Agreement.

The defendant company agrees that should the Court accept the terms of this Rule 11(c)(1)(C) Plea Agreement, the monetary penalty the Court shall impose consistent with this Agreement, including the special assessment and the fine, shall be due and payable immediately as of the time of sentencing.

4.  **Rights Waived by Pleading *Nolo Contendere*.** Through its authorized representatives, the defendant company knowingly and voluntarily waives the following rights through its *nolo contendere* pleas:

   a.  The right to plead not guilty, and to persist in a plea of not guilty,

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 3
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1        b.    The right to a speedy and public trial before an impartial jury;

2        c.    The right to the effective assistance of counsel at trial;

3        d.    The right to be presumed innocent until guilt has been established at trial, beyond a reasonable doubt;

       e    The right to confront and cross-examine witnesses against it at trial;

       f.    The right to compel or subpoena witnesses to appear on its behalf at trial; and

       g.    The right to appeal a finding of guilt or any pretrial rulings.

5.    <u>Applicability of Sentencing Guidelines</u>.  Through its authorized representatives, the defendant company understands and acknowledges the following:

       a.    The United States Sentencing Guidelines promulgated by the United States Sentencing Commission are applicable to this case, except that pursuant to USSG §§ 8C2.1 and 8C2.10, the United States Sentencing Guidelines are not applicable for purposes of determining a fine, because there are no guidelines applicable to an organization for the offenses charged in Counts 1 and 6. Instead, the fine is to be determined under 18 U.S.C. §§ 3553 and 3571. All other aspects of Chapter Eight of the Sentencing Guidelines that apply to corporate defendants are applicable, including provisions for probation and community service.

       b.    This Plea Agreement states the agreement and recommendation of the parties concerning the disposition of this case, should the Court determine to accept the Plea Agreement under the provisions of Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

6.    <u>Rule 11(c)(1)(C) Agreed Sentencing Terms</u>.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the United States and the defendant company through its authorized representatives agree that the following is the appropriate sentence to be imposed in this matter, if the Court accepts the pleas of *nolo contendere* entered by the defendant company, and the terms of this Plea Agreement:

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 4
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1    a.   <u>Fine</u>. Defendant company shall pay an aggregated fine in the amount of Fifteen Million Dollars ($15,000,000) for both counts of conviction, including any amount paid in the form of community service as described below, which fine and community service payment are due and payable immediately upon sentencing herein.

   b.   <u>Mandatory Special Assessment</u>. Defendant company shall pay a special assessment of One Hundred Twenty-Five ($125.00) Dollars for Count 1, and a special assessment of Four Hundred ($400) Dollars for Count 6, for a total for Five Hundred Twenty-Five ($525.00) Dollars which is due and payable immediately upon sentencing.

   c.   <u>Probation</u>. Pursuant to USSG §§ 8D1.1 and 8D1.2, defendant company will be placed on organizational probation for a period of five years, subject to all applicable provisions in 18 U.S.C. § 3564, including revocation upon violation, modification and early termination. The terms of probation shall include the following specific provisions in addition to the Court's standard conditions:

      (1)   <u>No Further Violations</u>. Defendant company shall commit no violations of environmental or pipeline safety laws or regulations, including those laws and regulations for which primary enforcement has been delegated to state authorities. The United States Attorney's Office for the Western District of Washington will not consider to be a violation of probation, any Grade C violation that is minor, and not part of a continuing pattern of violations, where such treatment will not present an undue risk to an individual or the public or be inconsistent with any directive from the Court, within the meaning of USSG § 7B1.2(b). For purposes of this section of this Agreement only, a minor violation of the Clean Water Act that would otherwise be a Grade C violation would not be considered a violation of probation solely by virtue of the last sentence of 33 U.S.C. § 1319(c)(1). The determination of whether the violation fits within this category shall be within the reasonable discretion of the government, and in making this determination, the government will provide the defendant company an opportunity to present its position to the United States Attorney's Office. The government's position on

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 5
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

whether a subsequent violation is an appropriate basis for a probation violation does not bind the United States Probation Office or the Court. Nothing herein shall prohibit the United States from proceeding administratively, civilly, or criminally against defendant company in any separate proceeding for any alleged environmental violation.

    (2) <u>Compliance program</u>. Defendant company and its successor in interest shall comply with the terms and conditions of the consent decree that will be entered into between the United States of America and Shell Pipeline Company LLP, in case number CV02-1178R, United States District Court for the Western District of Washington, to include the payment of the civil penalty referenced therein and the appended pipeline integrity plan compliance plan. As part of this agreement, defendant company and its successor in interest shall provide the United States Attorney's Office for the Western District of Washington and the United States Probation Office with immediate notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action which affect the obligations under this consent decree. Defendant company, and its successor in interest, shall not through a change of name, business reorganization, sale or purchase of assets, divestiture of assets, or similar conduct, take action that would constitute a violation of that civil consent decree.

    (3) The parties further agree, pursuant to Rule 11(c)(1)(C), that execution of a portion of the Fifteen Million ($15,000,000) Dollars criminal fine, in the amount of up to Five Million ($5,000,000) Dollars, shall be suspended for the express purpose of defendant company applying this amount to performing community service pursuant to USSG § 8B1.3, and in furtherance of the sentencing principles provided in 18 U.S.C. § 3553(a). The explicit goal of the community service requirement to be imposed on defendant company shall be to fund one or more projects for the benefit of the community represented by the City of Bellingham, Washington  The specific project or projects are to be determined prior to the imposition of sentencing in this case. The projects may be proposed by defendant company but must

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 6
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1. be approved by the United States Attorney's Office for the Western District of Washington.

    d.    The defendant company and the United States acknowledge that this Plea Agreement is made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. If the Court rejects the Plea Agreement (including but not limited to the sentencing provisions herein), both parties shall have the right, as set forth in Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to withdraw from this Agreement and proceed to trial.

7.    <u>Restitution</u>. The parties agree as a part of this Rule 11(c)(1)(C) Plea Agreement, that the sentence appropriate in this matter shall not include restitution, and that restitution shall not be imposed a condition of probation, because the issue of restitution for natural resource damage is being addressed through agreements with the State of Washington, the City of Bellingham and third parties, and the issue of restitution for damages suffered by person has been the subject of several civil actions, some of which have already concluded.

8.    <u>Statement of Facts</u>. The parties stipulate that the following factual statement forms a sufficient basis for the defendant company's plea of *nolo contendere* to the Counts 1 and 6 of the Indictment.

**Introduction**

(1)    At all relevant times, the Olympic Pipe Line Company, Inc. ("Olympic") was a Delaware corporation with its principal place of business in Renton, Washington. Olympic owned a 400- mile, hazardous liquid pipeline that transported refined petroleum products, including gasoline, diesel, and aviation fuel, from four refineries to various delivery facilities throughout the Western District of Washington and in parts of Oregon

(2)    At all relevant times, Equilon Pipeline Company LLC ("Equilon") was a Delaware limited liability company, with its principal place of business in Houston, Texas.

(3)    In 1991, the beginning of the time period relevant to this case, Olympic's shares were owned by Texaco Trading and Transportation, Inc.("TTTI"), and Atlantic Richfield Company ("ARCO") and BP (which in 1995 sold its interests to GATX Terminal Corporation). In April 1999, TTTI's shares were transferred to Equilon.

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 7
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

(4) Between July 1, 1991, and July 1, 1998, Texaco Pipeline Inc. ("TPLI"), a subsidiary of TTTI, and after July 1, 1998 to June 10, 1999, TPLI's successor in interest, Equilon, pursuant to an Agreement (hereafter, "Agreement"), provided specified services to Olympic and also provided up to five employees to work for Olympic, in the positions of Manager, Supervisor Operations and Maintenance; Finance Coordinator; and Engineering Coordinator. TPLI and Equilon were paid a fee for providing the specified services under the Agreement and were reimbursed for the salaries and benefits of the employees supplied to work for Olympic.

**Count One**

(5) Beginning in 1994, contractors working for the City of Bellingham installed new reservoirs and new water pipelines at a Water Treatment Plant in Whatcom Falls Park in Bellingham. The water pipelines were installed above and below the Olympic pipeline at that location. The Olympic pipeline was exposed by a City contractor at certain locations, and the City contractor's excavation equipment worked directly above the pipeline. Olympic employees were not present at all times to monitor all aspects of this construction activity. The Olympic pipeline later ruptured at one of these locations on June 10, 1999. Following that rupture, the pipeline was unearthed in this location and numerous gouges and dents, consistent with strike marks left by excavation equipment, were observed.

(6) In 1996 and 1997, Olympic conducted internal inspections of the pipeline in the segment between Ferndale Station and Allen Station, which included the area of the Bellingham Water Treatment Plant. Olympic used mechanical devices commonly known as in-line inspection tools that were intended to assist in identifying possible anomalies and deformations in the pipeline. These inspections identified possible anomalies and deformations in the pipeline at the Water Treatment Plant. While excavation of this area was initially considered, Olympic did not excavate the pipeline in the area of these possible anomalies and deformations

(7) In 1998, Olympic installed a new facility on its pipeline called the Bayview Products Terminal ("Bayview"). Bayview was located on the Ferndale to Allen segment approximately 19 miles downstream of the Bellingham Water Treatment Plant and approximately two miles upstream of the Allen Station. The segment of the pipeline passing through Bayview was designed to withstand lower operating pressures than the rest of the pipeline in that segment. As a result, surge relief valves were installed within Bayview to protect the pipeline and devices within Bayview from damage in case of high pressure.

(8) The surge relief valves at Bayview were activated by separate pilot valves that sensed pressure in the pipeline and opened the surge relief valves when pressure reached designated set points. In December 1998, Olympic personnel discovered that a pilot valve was opening the main surge relief valve at between 70 and 180 pounds per square inch of pressure ("psi"), below the designed set point of 650 psi. To address this problem, Olympic mechanics concluded that they needed to change only a spring in the pilot valve, however, the pilot valve contained the correct spring. Rather, they needed to replace a piston, piston cover, and an "O" ring. Olympic personnel then tested the pilot valve in isolation from the surge relief valve, and did

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 8
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

not confirm whether the pilot valve actually opened or operated the surge relief valve.

(9) If the pilot operated surge relief valve at Bayview did not operate to relieve high pressure within Bayview, another safety device, a block valve at the inlet to Bayview, was designed to close and block all flow into Bayview. Closure of the block valve effectively shut down the pipeline, causing pressure upstream of Bayview to rise until upstream pumps at Ferndale and Cherry Point were stopped. Between December 18, 1998, and June 10, 1999, the block valve at Bayview closed repeatedly without being commanded to do so in order to protect Bayview from high pressure. No determination was made by Olympic personnel as to the causes of the repeated block valve closures.

(10) On June 10, 1999, Olympic was operating its pumps to deliver unleaded gasoline from a refinery upstream of Bayview at Cherry Point to the Seattle area. That afternoon, the primary computer used by Olympic to monitor and control operations on the pipeline became slow and unresponsive. At the time, Olympic personnel, who were operating Olympic's primary computer at between 75-80% of maximum processing capacity in normal operations, were adding software routines to this computer that for reasons that remain unexplained demanded additional processing capacity. At approximately 3:18 p.m, an Olympic Control Center operator began a routine operational change that required use of the computer to start a pump at Woodinville. The command to start the pump failed, resulting in pressure rising upstream until it reached Bayview. The surge relief valve at the entrance to Bayview, which was designed to relieve pressure within Bayview, failed to sufficiently relieve pressure within Bayview. The block valve at the inlet to Bayview subsequently closed without being commanded to do so. Pumps at Ferndale and Cherry Point continued to pump gasoline against the closed block valve.

(11) The pressure in the pipeline upstream of Bayview continued to increase until approximately 3:29 p.m., when the pipeline ruptured in a gouge in the pipeline adjacent to the Bellingham Water Treatment Plant. Approximately 160,000 gallons of unleaded gasoline was discharged from the pipeline at the point of rupture. The gasoline flowed into nearby Hannah Creek and then into Whatcom Creek, both navigable waters of the United States.

(12) Pursuant to Exhibit C of the Agreement relating to Special Services, and at the specific request of Olympic's Board of Directors, in 1996 TPLI assisted Olympic with respect to the siting of the Bayview facility. Pressure conditions caused by the proximity of the new facility to the existing Allen Station contributed to the uncommanded closures of the Bayview block valve as described above.

(13) As a result of this conduct, TPLI and, by operation of law, Equilon, did negligently contribute to Olympic's discharge into or upon the navigable waters of the United States, that is Hanna Creek, a tributary to Whatcom Creek, which in turn is a tributary to Bellingham Bay and the Puget Sound, a quantity of oil, to wit, gasoline, in an amount determined to be harmful in violation of Title 33, U.S.C. Section 1321(b)(4)

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 9
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

**Count 6**

(14) At all relevant times, federal safety standards for interstate pipelines carrying hazardous liquids required the implementation and documentation of a continuing training program, to instruct operating and maintenance personnel in carrying out procedures in pipeline operations manuals relating to their assignments; knowing the characteristics of hazardous liquids; recognizing conditions likely to cause emergencies and taking appropriate corrective action related thereto, controlling accidental releases; using fire fighting equipment; and safely repairing facilities. Pipeline companies, at intervals not exceeding 15 months, but at least once each calendar year, also were required to review with pipeline personnel their performance under the training program, and to make appropriate changes to the training program.

(15) Under the Agreement, TPLI, and Equilon, its successor by operation of law as of July 1998, had an obligation to ascertain whether Olympic maintained records documenting that at intervals not exceeding 15 months but at least once each calendar year, Olympic had reviewed with the control room operators their performance in meeting the objectives of Olympic's training program with respect to emergency response to a pipeline rupture. This would include training with respect to determining whether a pipeline rupture has occurred before restart of the pipeline following an unscheduled shutdown.

(16) In 1997 and 1998, TPLI and Equilon, its successor, failed to take steps to perform the obligations set forth in subparagraph 15, and thereby did knowingly and willfully aid and abet a violation of a minimum safety standard for interstate pipelines carrying hazardous liquids, relating to training, in violation of Title 49, United States Code, Section 60123(a). It is not contended that this conduct was the cause of the pipeline rupture on June 10, 1999.

9. <u>Non-Prosecution of Additional Offenses</u>. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees to move to dismiss the remaining counts in the Indictment at the time of sentencing and not to prosecute defendant company for any additional offenses known to the government as of the time of this Agreement that are based upon evidence in the government's possession at this time, or that arise out of the conduct giving rise to this investigation. The defendant company acknowledges and agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with all relevant evidence.

10. <u>Corporate Authorization</u>. Defendant company agrees to have its corporate representative, with appropriate authorization under corporate law to speak on behalf of the defendant company, appear and enter the pleas of *nolo contendere* to Counts 1 and 6

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 10
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

and also appear for the imposition of sentence. Defendant company further agrees to provide the United States and the Court with a written statement in the form of a notarized legal document certifying that defendant company is authorized to enter into and comply with all of the provisions of this Plea Agreement. The resolution further shall certify that the President or Chief Operating Officers, or his or her designee, is authorized to take these actions, and that all corporate formalities required for such authorization have been observed.

11. **Statements by the Defendant**. As part of this Plea Agreement, the defendant company agrees that it will not make public statements (such as press releases or media statements) relating to the statement of facts contained in paragraph 8 of this Plea Agreement. Further, the parties agree not to make any public statements regarding this Agreement, other than required by law, prior to the entry of the pleas contemplated by this Agreement. This paragraph does not limit the positions that defendant company or its representatives may take in legal proceedings involving non-governmental parties.

12. **Statute of Limitations**. In the event that this Agreement is not accepted by the Court for any reason, or the defendant company has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (a) 30 days following the date of non-acceptance of the Plea Agreement by the Court; or (b) 30 days following the date on which a breach of the Plea Agreement by the defendant company is discovered by the United States Attorney's Office.

13. **Interdependence of Plea Agreements**. This Plea Agreement shall be conditioned upon the Court's acceptance of the plea agreements entered into by all other defendants in the above-captioned case. The defendant company, through its authorized representatives, understands, therefore, that this Agreement is part of a package plea agreement with the United States, and that if any of the other defendants named in this case do not enter into, and plead guilty pursuant to their respective agreements reached with the United States, or subsequently seeks to withdraw the guilty pleas entered

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 11
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

pursuant to these agreements prior to sentencing, then the United States may withdraw its consent to all plea agreements and may thereafter be able to proceed to trial against all defendants for the crimes charged in the Indictment

It is also understood that the entry into this Plea Agreement by the parties is conditioned upon the final resolution of the civil action filed by the United States in case number CV02-1178R, United States District Court for the Western District of Washington, and the administrative penalty action filed by the State of Washington, in an administrative penalty matter, Washington Ecology Notice of Penalty No. 02PPRHQ-4039. The federal civil action shall be resolved by a Consent Decree, and an affiliated pipeline integrity program (referred to as Appendix A). As part of the resolution of these two actions, the defendant company will pay an additional total penalty of Ten Million ($10,000,000) Dollars under the terms and conditions agreed to in those actions. The Consent Decree, and its pipeline integrity program, shall be submitted to the Court for approval pursuant to the customary process for such matters. The parties agree that if these separate federal and state civil and administrative penalty matters are not resolved by signed agreements no later than close of business, December 20, 2002, each party may withdraw from this Plea Agreement and proceed to trial. Further, the parties agree that should the Court reject the Consent Decree, or should the Consent Decree otherwise not be entered by the Court and made effective, each party may withdraw from this Plea Agreement and proceed to trial. Should one of the parties elect to withdraw from this Plea Agreement, the parties shall agree to a reasonable future date for re-calendaring the trial and additional pretrial motions in this matter.

14. <u>Waiver of Appeal</u>. The defendant company, through its authorized representatives, is aware that 18 U.S.C. § 3742 gives the right to appeal the sentence to be imposed, and that other federal statutes give a defendant the right to appeal other aspects of the conviction. In consideration of the United States's agreement as stated herein, the defendant company, through its authorized representative knowingly and voluntarily agrees to waive the following rights:

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 12
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1       a.      The right, conferred by 18 U.S.C. § 3742, to appeal the sentence
imposed by the Court; and

        b.      The right to appeal any aspect of the defendant company's conviction, including any pretrial suppression matters or other pretrial dispositions of motions and other issues.

If the Sentencing Court imposes a sentence inconsistent with the terms of this Plea Agreement, and the defendant company seeks to withdraw its *nolo contendere* plea and is not permitted to do so, the defendant company reserves the right to appeal the denial of its ability to withdraw.

15.     **Voluntariness of the Plea**. Defendant company, through its authorized representatives, acknowledges that it has entered into this Plea Agreement freely and voluntarily and that it has been fully advised by counsel. Defendant company specifically agrees that no threats or promises, other than the promises contained in this Plea Agreement and the promises set forth in the separate agreements resolving the federal civil and Washington State administrative penalty matters, were made to induce it to enter into the *nolo contendere* pleas called for by this Agreement.

16.     **Completeness of Agreement**. The United States and the defendant company acknowledge that these terms, supplemented by the agreements resolving the federal civil and Washington State administrative penalty matters referenced above, constitute the entire Plea Agreement between the parties. This Agreement only binds the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor. The defendant company through its authorized representatives has discussed this Agreement with its attorneys and understand that other than as already set forth in this Agreement (that is, subject to the provisions of paragraph 13 above), nothing contained herein is meant to limit the rights and authority of the United States to take further civil or administrative action against the defendant company or any affiliated or related corporations, including but not limited to, any listing and debarment

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 13
CR01-338R

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

proceedings to restrict rights and opportunities of the defendant company to contract with or receive assistance, loans, and benefits from United States agencies.

Dated this 11th day of December, 2002.

FOR THE UNITED STATES:

*/s/ John McKay*
JOHN McKAY
United States Attorney

*/s/ Lawrence Lincoln*
LAWRENCE LINCOLN
Assistant United States Attorney

*/s/ Francis J. Diskin*
FRANCIS J. DISKIN
Assistant United States Attorney

*/s/ Helen J. Brunner*
HELEN J. BRUNNER
Assistant United State Attorney

*/s/ James D. Oesterle*
JAMES D. OESTERLE
Special Assistant United States Attorney

FOR EQUILON PIPELINE COMPANY:

*/s/*
AUTHORIZED REPRESENTATIVE
For Equilon Pipeline Company, LLC
Defendant

*/s/ Ronald L. Olson*
RONALD L. OLSON
JEROME C. ROTH
Munger Tolles Olson, LLP
Attorneys for Defendant Equilon Pipeline

*/s/ David V. Marshall*
DAVID VANCE MARSHALL
NICK VERWOLF
Davis Wright Tremaine LLP

PLEA AGREEMENT/
Equilon Pipeline Company, LLC - 14
CR01-338R